UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

UNITED STATES OF AMERICA,

v. 14 Cr. 652 (PGG)(AJP)

LUIS TRUJILLO,

Defendant.

------------------------------x

New York, N.Y.
March 24, 2016
11:15 a.m.

Before:

HON. ANDREW J. PECK
Magistrate Judge

APPEARANCES

PREET BHARARA
United States Attorney for the
Southern District of New York
BY: JUSTINE GERACI
Assistant United States Attorney

JENNIFER BROWN
Attorney for Defendant

ALSO PRESENT: STEVEN BERGER, NYPD

(Case called)

(In open court)

THE COURT: Be seated.

MS. GERACI: Good morning, your Honor. Justine Geraci for the government. I'm joined at counsel table by Detective

Steven Berger, with the New York City Police Department Cold Case Squad.

MS. BROWN: Good morning, your Honor. Jennifer Brown on behalf of Mr. Trujillo.

THE COURT: All right. Mr. Trujillo, please stand. Is this your signature on the consent to proceed form?

THE DEFENDANT: Yes, your Honor.

THE COURT: Before you signed it, did Ms. Brown explain to you that you have the right to have your plea heard by Judge Gardephe but that if you consented -- as it appears you have -- I can hear your plea, and I will make a recommendation to Judge Gardephe?

THE DEFENDANT: Yes, your Honor.

THE COURT: And you have agreed to that? I saw your head nod; I'm not sure I heard the answer. Was that a yes?

THE DEFENDANT: Yes.

THE COURT: Thank you. Please raise your right hand.

(Defendant sworn)

THE COURT: All right. Put your hand down, remain standing. State your full name for the court reporter's transcript.

THE DEFENDANT: My name is Luis Julian Trujillo.

THE COURT: Are you a United States citizen, sir?

THE DEFENDANT: Yes, your Honor.

THE COURT: What is the last grade of schooling that

you completed?

THE DEFENDANT: 12th grade.

THE COURT: And have you got a high school degree?

THE DEFENDANT: No.

THE COURT: But you got to the 12th grade.

THE DEFENDANT: Yes.

THE COURT: Are you recently or currently under the care of a doctor, a psychiatrist or any other medical or mental health professional?

THE DEFENDANT: No, your Honor.

THE COURT: Have you ever been treated for drug addiction or alcohol addiction?

THE DEFENDANT: No, your Honor.

THE COURT: Have you taken any drugs or medicine yesterday or today, even anything as simple as an aspirin?

THE DEFENDANT: No, your Honor.

THE COURT: Do you feel physically and mentally all right and able and willing to proceed in court today?

THE DEFENDANT: Yes, your Honor.

THE COURT: Are you having any difficulty seeing or hearing or understanding what I'm saying to you?

THE DEFENDANT: No, not at all, your Honor.

THE COURT: Promise me now that if at any point today you don't understand what I'm asking you or what I'm telling you, you won't guess or try to fake your way through it; you

will feel comfortable asking me to be louder, or clearer, or both as necessary. OK?

THE DEFENDANT: I promise.

THE COURT: All right, very good.

We need to take your waiver of indictment with respect to the S2 superseding information. Please answer the clerk's questions.

DEPUTY COURT CLERK: You are Luis Trujillo.

THE DEFENDANT: Yes, sir.

DEPUTY COURT CLERK: Have you signed this waiver of indictment?

THE DEFENDANT: Yes, sir.

DEPUTY COURT CLERK: Before you signed it, did you discuss it with your attorney?

THE DEFENDANT: Yes, sir.

DEPUTY COURT CLERK: Did your attorney explain it to you?

THE DEFENDANT: Yes, sir.

DEPUTY COURT CLERK: Do you understand what you are doing?

THE DEFENDANT: Yes, sir.

DEPUTY COURT CLERK: Do you understand you are under no obligation to waive indictment?

THE DEFENDANT: Yes, sir.

DEPUTY COURT CLERK: Do you understand if you do not

waive indictment, if the government wants to prosecute you, they will have to present this case to a grand jury which may or may not indict you?

THE DEFENDANT: Yes, sir.

DEPUTY COURT CLERK: You understand by signing this waiver of indictment, you have given up your right to have your case presented to a grand jury?

THE DEFENDANT: Yes.

DEPUTY COURT CLERK: Do you understand what a grand jury is?

THE DEFENDANT: Yes.

DEPUTY COURT CLERK: Have you received a copy of the information?

THE DEFENDANT: Yes.

DEPUTY COURT CLERK: Do you waive its public reading?

THE DEFENDANT: Yes.

THE COURT: For the record, you have seen the S2 information, correct?

THE DEFENDANT: Yes.

THE COURT: All right. Have you discussed that with Ms. Brown and talked about how you might wish to plead?

THE DEFENDANT: Yes, sir.

THE COURT: And are you satisfied with the representation that she has given and is providing to you?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. At this point what is your plea?

THE DEFENDANT: Guilty.

THE COURT: All right. I'm going to ask you some questions to make sure you understand the charges you are facing and some of the consequences of pleading guilty, and at the end of that I will ask you if you still wish to plead guilty or not.

Do you understand you are charged in Count One with agreeing with others to distribute and possess with intent to distribute mixtures containing cocaine?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that that carries a maximum of 20 years' imprisonment; a maximum of lifetime supervised release and a mandatory minimum of three years' supervised release; maximum fine of a million dollars, or twice the gross gain or loss from your offense; a $100 mandatory special assessment; and court ordered restitution?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you know that you have the right to plead not guilty and the right to a public jury trial on these charges?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that if you were to plead not guilty and go to trial, you would be presumed

innocent unless and until the prosecutors proved your guilt by the standard of beyond a reasonable doubt?

THE DEFENDANT: Yes, your Honor.

THE COURT: At a trial, you have the right to be represented by counsel at all times and at all stages leading up to the trial and, if necessary, Ms. Brown or another attorney will be appointed for you free of charge. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that you have the right at a trial, yourself and through your attorney, to confront and question anyone who testifies against you, and you also have the right to call witnesses to testify for you, and, if necessary, the court would subpoena them to get them to trial?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that no one could force you to incriminate yourself at the trial, meaning no one could force you to testify if you didn't want to; but, on the other hand, if after getting Ms. Brown's legal advice you wanted to testify, you would have the absolute right to do so?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that if you do continue to plead guilty today, that means there will be no trial of any kind; so you're giving up your right to a public jury trial and waiving any defenses you may have and any claims

that your constitutional rights may have been violated?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you talked with Ms. Brown? Has she explained to you how the U.S. Sentencing Commission guidelines and the additional sentencing factors in Title 18 U.S. Code, Section 3553 may apply to your case?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that Judge Gardephe is obligated to calculate the applicable sentencing guideline range, to consider that range, to consider any departures under the guidelines and to consider all the sentencing factors in Section 3553?

THE DEFENDANT: Yes, sir.

THE COURT: Among the factors that the court will take into account in sentencing you are the conduct you engaged in, the victim of the offense, your role in the offense, whether you have accepted responsibility for your acts, whether you have any other criminal history, and whether you have obstructed justice in any way. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Between now and the date of sentencing, the probation department will conduct an investigation and prepare a presentence report. You and Ms. Brown will get copies of that, as will the prosecutors and Judge Gardephe. If you or Ms. Brown on the one hand or the prosecutors on the

other believe anything in the presentence report is incorrect or inaccurate, each side can file objections with the court. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that Judge Gardephe won't be able to determine what sentencing guidelines or other 3553 sentencing factors apply to you until that report is prepared and any objections filed and ruled on?

THE DEFENDANT: Yes, your Honor.

THE COURT: As the term sentencing guidelines implies, and as the Supreme Court has made clear, they're guideline and not mandatory, and so Judge Gardephe can give you a sentence within the guideline range, less than the guideline range or greater than the guideline range, but of course not greater than the statutory maximum. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you also understand that under some circumstances, subject to the limitations in your plea agreement letter -- that we will get to in a minute -- that you and/or the government may have the right to appeal from any sentence you get?

THE DEFENDANT: Yes, your Honor.

THE COURT: I don't know what sentence you are hoping for or wishing for as you stand here today, but do you understand that even if Judge Gardephe gives you a sentence

more severe than that, you will still be bound by your guilty plea and not allowed to withdraw it?

THE DEFENDANT: Yes, your Honor.

THE COURT: In the federal system parole has been abolished, so if you are sentenced to prison, you will not be released early on parole. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that if you are sentenced to a term of supervised release and violate any of the conditions of that release, you face additional punishment, including additional imprisonment up to the maximum allowed by law?

THE DEFENDANT: Yes, your Honor.

THE COURT: I'm not sure if I asked you this before, and if so, I have forgotten the answer, or I skipped it, but are you a United States citizen, sir?

THE DEFENDANT: Yes, sir.

THE COURT: Good. Do you understand that in addition to the criminal law consequences we have been talking about, there are civil consequences to a felony conviction, such as the loss of voting rights, loss of opportunity to hold certain jobs or licenses, etc.?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand finally that the answers you have been and will give me today can be used

against you in a prosecution for perjury or false statements if you're not telling me the truth?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Trujillo, has anyone made any threats to you, or anybody else, to convince or influence you to plead guilty?

THE DEFENDANT: No, your Honor.

THE COURT: All right. I have been handed a copy of your plea agreement letter dated February 3 on the first page and signed by you and Ms. Brown on the sixth and final page, today, March 24. Other than what is contained in the plea agreement, has anyone made any promises to you or anybody else to convince or influence you to plead guilty?

THE DEFENDANT: No, your Honor.

THE COURT: In particular -- and this is going to sound redundant -- it is, but I have to ask you -- has anyone made any promise to you as to the specific sentence you are going to get from Judge Gardephe?

THE DEFENDANT: No, your Honor.

THE COURT: Is this your signature on the last page of the plea letter?

THE DEFENDANT: Yes, sir.

THE COURT: And before you signed it, did Ms. Brown go through it with you and explain it all to you?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. I'm going to ask you a few questions about the plea letter. Even if I don't cover something, you are still going to be bound by it as long as you continue to plead guilty.

Do you understand that you have agreed to make certain allocutions during your guilty plea with respect to codefendants and use of a gun, etc.? And we will hear more from you on that when I get to your allocution.

THE DEFENDANT: Yes, sir.

THE COURT: And do you understand that you have agreed to waive the statute of limitations with respect to Count One?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you also understand that you are admitting to the forfeiture allegation with respect to Count One, meaning certain property or money or both will be forfeited to the government?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that you have stipulated and agreed with the prosecutors to a sentencing guideline of 240 months' imprisonment?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that you have agreed not to file a direct appeal or a collateral challenge, including challenges under 28 U.S. Code 2241 or 2255 from any sentence at or below that range of 240 months?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you also understand that you have agreed not to seek to withdraw your plea or attack your conviction on direct appeal or collaterally on the ground that the government failed to produce discovery material, Jencks Act material, exculpatory material or impeachment material?

THE DEFENDANT: Yes, your Honor.

THE COURT: And there is a paragraph in here that if you are not a U.S. citizen -- although you are -- you would face deportation, which is presumptively mandatory, and you would not have the right to withdraw your plea based on any immigration consequences, even though it probably doesn't apply. You understand that.

THE DEFENDANT: Yes, your Honor.

THE COURT: Ms. Geraci, any additional questions you would suggest?

MS. GERACI: No, your Honor.

THE COURT: Now that we have gone through the plea agreement and some of the other rights you are giving up by pleading guilty, and some of the other consequences, do you still wish to plead guilty?

THE DEFENDANT: Yes, your Honor.

THE COURT: And are you doing so freely and voluntarily because you are guilty?

THE DEFENDANT: Yes, your Honor.

THE COURT: Ms. Brown, have you discussed with Mr. Trujillo the consequences of pleading guilty?

MS. BROWN: Yes, your Honor.

THE COURT: And based on the discovery you have received from the prosecutors, your investigation and what you have learned from your client, is it your opinion that he is pleading guilty because he is guilty?

MS. BROWN: Yes, your Honor.

THE COURT: Please tell me in your own words, Mr. Trujillo, what it is you did to commit this crime.

THE DEFENDANT: In 2002, I agreed with another person to assist with the distribution of cocaine. In August 2002, my sister's boyfriend Tito had a dispute with a guy named Andy over drug territory. On August 11, 2002, in the Bronx, I drove Tito and another person who I knew as Popeye while they searched for Andy. When we got to the area of Franklin Avenue and 169th Street, both Tito and Popeye shot Andy and killed him. I knew at the time what I was doing was wrong and illegal.

THE COURT: All right. And the Andy you're referring to is Andrew Belkairen?

THE DEFENDANT: Yes, your Honor.

THE COURT: Any additional questions or any proffer from the prosecution, Ms. Geraci?

MS. GERACI: No additional questions, but I'm happy to

make a proffer. Your Honor, the government would show if this case went to trial the following three elements beyond a reasonable doubt as to Count One of the S2 information:

First, that two or more persons agreed or conspired to distribute or possess with the intent to distribute one or more controlled substances, specifically mixtures and substances containing a detectable amount of cocaine;

Second, that this defendant was a party to or a member of that agreement or conspiracy, and

Third, that this defendant joined the agreement or conspiracy knowing of its objective, which was to distribute or possess with the intent to distribute cocaine, and intended to join together with at least one other alleged conspirator to achieve that objective.

The government would further show venue by showing this crime occurred in the Bronx, New York.

Lastly, with respect to the allocution, concerning the death of Andrew Belkairin, the government would show that in connection with the cocaine distribution conspiracy in 2002 that the defendant and his coconspirators had an ongoing dispute with the victim Andrew Belkairin, who the defendant refers to as Andy; that on or about August 11, 2002 the defendant drove his coconspirators who were armed with firearms to find Mr. Belkairin, and that they intended to shoot him to resolve this dispute. Finally, when they found him in the

vicinity of Franklin Avenue and East 169th Street in the Bronx, the defendant's coconspirators discharged firearms at Mr. Belkairin, striking and killing him.

THE COURT: All right. And, Mr. Trujillo, just so we make sure the Is are dotted and Ts crossed, the agreement to distribute cocaine, you referred to you were in the Bronx when you were dealing with that.

THE DEFENDANT: Yes, sir.

THE COURT: All right. I'm satisfied that you understand the nature of the charges against you and the consequences of pleading guilty, and I'm also satisfied your plea is being made freely, voluntarily and knowingly, and that there is a factual basis for the plea. I therefore recommend to Judge Gardephe that he accept your plea of guilty to Count One of the information.

Has the date for sentencing been set, Ms. Geraci?

MS. GERACI: Your Honor, not by Judge Gardephe, but I have spoken with defense counsel and we would like a control date of July 11, 2016. I will call the Judge Gardephe's chambers and see if that's doable for them.

THE COURT: A control date of July 11 for your sentencing. Most likely that will change, and when it does Ms. Brown will be notified and she will tell you.

In the meantime I direct that a presentence report be prepared. I direct both the government and the defense to

within the 14 day trigger period submit their information to the probation staff.

You will need to meet with the probation staff, Mr. Trujillo, and answer their questions, because that's a critical part of the sentencing phase of your case. You understand that and will cooperate, right?

THE DEFENDANT: Yes, your Honor.

THE COURT: Ms. Brown, do you wish the clerk to mark the file that any such interview only take place in the presence of yourself or one of your colleagues?

MS. BROWN: Yes, your Honor.

THE COURT: All right, that will be so marked.

Bail? It appears that Mr. Trujillo is out on bail; is that correct?

MS. GERACI: He is, your Honor, and the government is not making any motion at this time for remand. He has been completely compliant with his conditions.

THE COURT: All right. Bail continued as previously set. Any applications can be taken up with Judge Gardephe.

Obviously, Mr. Trujillo, if you get in any trouble between now and your sentencing date, that can't possibly help you at sentencing, so continue to be compliant with bail.

Anything else from either side?

MS. GERACI: Not from the government. Thank you, your Honor.

MS. BROWN: No, your Honor.

THE COURT: I direct the U.S. attorney's office to obtain the transcript and to present it to Judge Gardephe along with any other paperwork he may require. With that we are adjourned on this matter.

(Adjourned)